Lacroix vs. Escobal.

## No. 9358.

### LEONIDE LACROIX VS. MANUEL ESCOBAL.

The petition of a citizen of the republic of France, asserting the right of ownership to a trade mark, discloses no cause of action in the absence of specific averment that copy of the mark was deposited, as required by the second article of the convention between the United States and France, proclaimed 'on April 16, 1869, in the Patent office at Washington.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*Farrar & Kruttschnitt* for Plaintiff and Appellant:

1. In trade mark cases the question is not whether the complainant was the original inventor, nor whether the article made and sold under his trade mark by the defendant is equal to his own in quality or value. But the Court proceeds on the ground that plaintiff has a valuable interest in the *good-will* of his trade or business; and having appropriated to himself a particular label, sign or trade mark, indicating to his customers that the article is sold by him or his authority, he is entitled to protection against one who attempts to pirate upon the good-will of his friends or customers, or the patrons of his trade or business, by using such label, sign or trade mark without his consent or authority. Partridge vs. Mencke, Cox's American Trade Mark Cases, 72; Upton on T. M., p. 97, and cases cited under II and III.

2. The property in trade marks has been repeatedly recognized in Louisiana, and also the property in good-will generally, yet we find no special statutory or codal enactment for either. Wolf vs. Barnett, 24 Ann. 97; Funke vs. Dreyfus, 34 Ann. 80; Ins. Oil Tank Co. vs. Scott, 33 Ann. 946; Bergamini vs. Bastian, 35 Ann. 60; Wintz vs. Vogt, 3 Ann. 16; Verges vs Forshee, 9 Ann. 294; Succession of Tourné, 21 Ann. 391.

Lacroix vs. Escobal.

3. This property has very little analogy to that which exists in copyrights or patents. The essence of the wrong consists in the false representations. The doctrine of the protection of trade marks does not depend entirely upon invasion of individual rights, but upon the broad principle of protecting the public from deceit. Matsell vs. Flanagan, Cox's Am. T. M. Cases, 367; Taylor vs. Carpenter, Cox's Am. T. M. Cases, 45; Taylor vs. Carpenter, Cox's Am. T. M. Cases, 37 and 38; Trade Mark Cases, 100 U. S. 82.

4. Alien friends are entitled to claim the same protection of this good-will as citizens, even though they reside and carry on their business in another country, and have no establishment here, and do not even sell or usually sell the goods on which such trade mark is affixed in this country. Joyce on Injunctions, p. 3; Collins Co. vs. Brown, Cox's Manual of T. M. Cases, Case No. 151; Collin's Co. vs. Cohen, Cox's Manual of T. M. Cases, Case No. 152; Collins Co. vs. Reeves, Cox's Manual of T. M. Cases, Case No. 164; Taylor vs. Carpenter, Cox's Am. T. M. Cases, 14 (Story J.); Taylor vs, Carpenter, Cox's Am. T. M. Cases, 32, (Woodbury J.); Taylor vs. Carpenter, Cox's Am. T. M. Cases, 45, N. Y. Ct. of Appeals.); Coat vs' Holbrook, Cox's Am. T. M. Cases, 20; Coffeen vs. Brunton, Cox's Am, T. M. Cases, 82; Deringer vs. Plate, Cox's Am. T. M. Cases, 324; Lemoine vs. Ganton, Cox's Manual of T. M. Cases, Case No. 125.

5. Nor does the fact that no reciprocity exists in the foreign country affect this case. Taylor vs Carpenter, Am. T. M. Cases, 37.

6. The protection extended by the treaty referred to by defendant was intended to confer an additional and cumulative statutory benefit on aliens not before possessed, not to strip them of any old rights. Such has been the construction uniformly placed on statutes protecting trade marks, and a treaty is but a statute. Taylor vs. Carpenter, Cox's Am. T. M. Cases, 37; Deringer vs. Plate, Cox's Am. T. M. Cases, 328.

7. But if the treaty had any other object in view than the one admitted by us, it would be open to the same constitutional objections as the Act of Congress pronounced void in 100 U. S. 82. That a treaty violating the constitution is void; that a treaty possesses no greater validity than any other law; that it is abrogated by a subsequent conflicting statute; that it abrogates prior conflicting statutes, are no longer open questions. The Cherokee Tobacco, 11 Wall, 616; Foster vs. Wilson, 2 Peters, 314; "Dred Scott" case, 19 How. 629; Cooley's Principles of Constitutional Law, p. 33.

### E. T. Florance for Defendant and Appellee :

VAGUENESS.

1. A petition claiming a right based on *prior* user, must allege specifically the date at which such user began.

NO CAUSE OF ACTION.

2. This Court takes judicial cognizance of the historical fact that the civil law as a system, and not the common law, prevails in France. 2 Ann. 335; 4 Ann. 129; 4 Ann. 254; 1 La. Rep. 540; 1 Wharton on Evidence, §§ 315, 296, 329; 91 U. S. (1 Otto 37.)

3. Under the civil law prevailing in France, "user" alone is insufficient to vest title to a trade mark—special statutory permission is pre-requisite. Laurent, Droit Civil International, Vol. 3, § 356.

4. Having no trade mark in France, a French citizen cannot (without acquiring it regularly in a foreign country) prevent a concurrent use in a foreign country.

5. A French citizen, even if *owner* of a trade mark in France, must comply with conditions of Treaty of Reciprocity of 1869, between United States and France on the subject of trade marks.

6. A treaty must be construed so as to give effect to its provisions. Sedgwick on Statutory Construction, note p. 226; 6 Wheaton, U. S., S. C. at p. 72.

7. A treaty is not unconstitutional merely because control over the subject matter thereof is not specially delegated to Congress. 3 Dallas, 237; 14 Peters, 388, 412, 415-16; 18 Howard, 349, 357; 2 Elliotts' Debates, 368, et seq.; Federalist letter, 64. At the utmost (and even then quaere) when it actually violates an express constitutional prohibition. V. also Constitution of United States, Art. VI., 16 Howard, 657-8; Art. 1 Sec. 8, Amendment X. The treaty making power has often been maintained where legislation would be ultra vires of Congress. 10 Ann. 391; 12 Ann. 577; 13 Ann. 113.

8. This treaty is valid as a "Regulation of Commerce." 100 U. S. 99; 15 Peters, 505-9, 13; 3 Wall. 417; 11 Wall. 616.

9. Louisiana does not permit the monopoly of "common things" by user—particularly non-local and non-exclusive. C. C., 450.

10. Plaintiff not being owner of trade mark, nor entitled to protection under the treaty, has no interest to prosecute, and discloses, therefore, no cause of action. C. P. 1, 15; 30 Ann. 810; 28 Ann. 412.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff appeals from a judgment which dismisses his petition, on the grounds of vagueness and no cause of action.

Plaintiff alleges that he has, for many years past, manufactured cigarette papers; that he has adopted a trade mark for said papers, of which he gives a full description in his petition; that the papers are put up in the form of small books, using the trade mark on the covers of the books, in manner and form shown in said books, of which one is filed with the petition and is annexed to the transcript in this Court; that he invented the trade mark, and was the first person to use it. The customary allegations in trade mark suits follow, including the allegation that defendant is engaged in the sale of cigarette papers in books resembling those used by petitioner, and so colored, stamped and labelled as to resemble the books and envelopes used by plaintiff. The prayer is for an injunction (which, however, was not insisted upon and not issued) and for damages and an account of profits made by defendant's violation of plaintiff's trade mark.

In support of his exceptions, the defendant charges that the plaintiff does not aver that he has used the alleged trade mark in the United States; that he is entitled to the exclusive use of it; that the averment that he is the first person to use, is insufficient as a basis of title; that the plaintiff is not the owner of the trade mark; that he has not averred compliance by him with essential prerequisites, exacted by the law of France and the convention between that country and the United States, as conditions precedent, to preclude the use of it even as charged, in this State and country.

We do not propose to state, consider and pass upon the numerous and interesting propositions of law in which the able counsel have engaged, as no practical good would be accomplished in doing so.

We will even abstain from determining whether we should or not take judicial notice of what the law of France, on the subject, provides—the more so, as counsel who would seek an expression of opinion, has not volunteered to whisper its behest and has remained content with a quotation from a learned commentator on the Napoleon Code.

The merits of the contention in the present controversy as exhibited by the pleadings (the petition and the exceptions) can well be determined on superior and more substantial grounds.

The following is the text of the convention between the United States of America and France, concerning trade marks, proclaimed April 16, 1869.

ARTICLE 1. "Every reproduction in one of the two countries of trade marks, affixed in the other to certain merchandise to prove its origin and quality, is forbidden, and shall give ground for an action for damages in favor of the injured party, to be prosecuted in the courts of the country in which the counterfeit shall be proven, just as if the plaintiff were a subject or citizen of that country.

"The exclusive right to use a trade mark, for the benefit of citizens of the United States in France, or of French subjects in the territory of the United States, cannot exist for a longer period than that fixed by the law of the country for its own citizens.

"If the trade mark has become public property in the country of its origin, it shall be equally free to all in the other country.

ART. 2. "If the owners of trade marks, residing in either of the two countries, wish to secure their rights in the other country, they must deposit copies of these marks in the Patent Office at Washington, and in the Clerk's Office of the Tribunal of Commerce of the Seine, at Paris." See treaty; Appendix to Brown on Trade Marks, p. 558.

It is apparent, that if this convention be *law*, the plaintiff, who is a citizen of the Republic of France, should have deposited a copy of the trade mark in question as indicated in the last article, if he wished to secure his right to it in this country, and, having done so, he should have averred accordingly that material fact, in his petition, which he has not done.

Counsel for plaintiff, when thus confronted with the treaty, returns that, if it has any other object in view, than a mere regulation of commerce, it would be open to the same objections successfully raised to the legislation of Congress of July 8, 1870, and August 14, 1876, which was pronounced void in the Steffers' case. (V. Trade Mark Cases, 100 U. S. 82-99.)

Lacroix vs. Escobal.

A reference to the decision in that memorable case, shows that the court substantially held: that if an act of Congress can, in any case, be extended to trade marks, as a regulation of commerce, it must be limited to their use in "commerce with foreign nations, and among the several States and with the Indian tribes;" that the legislation is not in its terms or essential character, a regulation thus limited; but in its language it embraces and was intended to embrace all commerce including that between citizens of the same State; that the legislation is void for want of constitutional authority, in as much as it is so framed, that its provisions are applicable to all commerce, and cannot be confined to that which is subject to the control of Congress.

The convention is not an act of Congress. It is a contract or pact between the United States and France, for the security of the rights of their respective citizens on the matters agreed upon. It is a treaty made under authority of the United States, that is by the President and the Senate. 16 How. 657-8.

Courts have no doubt the right and, therefore, the power to declare in proper cases that acts of Congress are null and void, as not having been made in furtherance of the Constitution; but, they have several times questioned their authority to pronounce a treaty unconstitutional and surely would not attempt to do so, unless the treaty violated the organic law of the general government. 3 Dall. 237; 14 Pet. 338, 412; 415-6, 18 How. 349, 357; 3d Elliots' Deb. on Const. 368, *et seq.*; Federalist, 614.

It cannot be questioned that in a treaty entered into between two nations, the subjects or citizens of each nation are represented therein by the organ of each country, and that what is there stipulated as rights and obligations of such subjects or citizens respectively is binding on the two governments and on such subjects or citizens.

Treaties have been given force and effect, when legislation would have proved unavailing.

Before concluding his opinion in the trade mark cases, Mr. Justice Miller, who was the organ of the court, used the following language, having no doubt in his mind, the convention above recited, which had already been proclaimed, when the legislation of Congress was adopted, which was subsequently by the judgment in said case, pronounced unconstitutional. He wrote:

"In what we have said, we wish to be understood as leaving untouched the whole power of the treaty making power over trade

marks and of the duty of Congress to pass any law necessary to carry the same into effect." (100 U. S. p. 99, § 1).

In the controversy now pending in this Court and now under consideration, we fail to see in what respect the convention in question violates the Constitution, and do not hesitate to say that even had we any doubt on the subject, we would not undertake to exercise such transcendent authority in the present case.

Judgment affirmed.